This case involves a contract for the sale of a mobile home by Furr Mobile Home Sales, Inc. (hereinafter "Furr"), a corporation that was not qualified to do business in Alabama, to Harvey and Sandra Blalock. The Blalocks signed a retail installment sales contract, and Green Tree Acceptance, Inc. (hereinafter "Green Tree"), purchased that contract from Furr. When the Blalocks failed to make the payments on the mobile home, Green Tree sued to recover the mobile home or the reasonable value thereof. The trial court granted a summary judgment in favor of the Blalocks, presumably on the ground that the contract was void because Furr had not qualified to do business in Alabama. We affirm.
The Blalocks, who are residents of Black, Alabama, went to Furr's lot in Bonifay, Florida, and placed an order for a new mobile home. About May 13, 1985, an agent of Furr went to the Blalocks' home in Black, Alabama, with a contract for the sale of a "new" 1984 Thomasville Constellation mobile home. It was at the Blalocks' home that the parties entered into a contract for the sale of the "new" mobile home. However, because of the defective condition of the mobile home, Furr agreed to do substantial repair work, in addition to delivering and setting up the mobile home. The work included repairing a leaky roof, damaged and broken windows, broken cabinets and doors, a defective chandelier, rusty appliances, and the bathroom tub. Furr also agreed to replace faulty wiring, carpet, wall paneling, baseboard moldings, and four defective wheels and tires. Furr also agreed to construct proper floor supports and build outside steps. The estimated cost of these repairs was $2,778.94. Furr also included in the contract a "1 [year] warranty."
Furr delivered and set up the trailer in Black, Alabama, and proceeded to do some of the repair work. The Blalocks began making monthly payments. Eventually, Furr quit making repairs, leaving a substantial portion of the work unfinished.
Green Tree, a general financing company that is qualified to do business in Alabama, had an agreement with Furr to purchase financing statements and installment sales contracts on mobile homes. After approving the Blalocks' application, Green Tree purchased the installment sales contract between Furr and the Blalocks. Furr has since filed for bankruptcy and has gone out of business. Green Tree claimed that it was not responsible for finishing any of the repair work pursuant to the agreement between Furr and the Blalocks. When the Blalocks quit making payments because the repairs on the mobile home remained unfinished, Green Tree sued to recover the mobile home or the reasonable value thereof.
The Blalocks filed a motion for a summary judgment. The motion was supported by an affidavit from Harvey Blalock; an affidavit from the Alabama Secretary of State, stating that Furr was a foreign corporation that was not qualified to do business in Alabama; and a memorandum brief arguing that Furr was not qualified to do business in Alabama and that, as an assignee of Furr, Green Tree was subject to that defense. See Ala. Code 1975, § 5-19-8.
Green Tree also filed a motion for summary judgment in its favor, supported by an affidavit from Ernest B. Johnson, a representative of Green Tree, and a memorandum brief arguing that Green Tree was a holder in due course having no privity with the Blalocks and therefore that it was not subject to the defenses the Blalocks had against Furr. There being no response to the Blalocks' contention that Furr was not qualified to do business in Alabama, the trial court gave Green Tree leave to file a response to that contention. Green Tree filed a second brief that reasserted the arguments in its first memorandum, but made no argument about whether Furr had qualified to do business in Alabama.
After all the briefs on both motions had been filed, the trial court granted a summary judgment in favor of the Blalocks, presumably because Furr was a foreign corporation that had not qualified to do business in Alabama. Pursuant to Ala. Code 1975, § 10-2A-247(a), the contract between Furr and the Blalocks was held to be void and *Page 1369 
unenforceable. Thus, Green Tree's motion for a summary judgment was denied.
Green Tree filed a post-judgment motion entitled "Motion for Reconsideration, Rehearing and/or Modification," along with a supporting memorandum brief. The memorandum asserted arguments not previously raised by its pleadings, motions, or memorandums. One argument was that Furr was engaged in interstate, rather than intrastate, commerce and therefore that Furr was not subject to the Alabama qualification statute. The motion was denied, and this appeal followed.
The issues on appeal are:
1. Whether the claim that Furr was involved in interstate, rather than intrastate, commerce was raised in a timely fashion prior to appeal.
2. Whether there is any evidence creating a genuine issue of material fact that Furr was in the business of interstate, rather than intrastate, commerce.
3. If Furr is determined to be a non-qualified foreign corporation engaging in intrastate commerce, whether it is nevertheless entitled to a benefit under the equitable language in the foreign corporation statute.
 I.
In their brief on motion for summary judgment, the Blalocks met their burden of proving a prima facie case that Furr was a foreign corporation that had not qualified to do business in Alabama. Although the Blalocks never specifically argued that Furr was engaged in intrastate commerce, that argument was not necessary to establish a prima facie case; rather, Green Tree had the burden of proving that it was exempt from the statute. Green Tree made several arguments in its memorandum in response to the defendants' motion for summary judgment and in its memorandum in support of its own motion for summary judgment. However, Green Tree did not raise the argument that Furr was engaged solely in interstate activity and was thereforeimmune from the qualifying statute, until it filed a post-judgment motion.
The question of whether a new legal argument in a post-judgment motion is timely, is a question of first impression in this State. Other jurisdictions considering the question presented by this case have concluded that new legal arguments in a post-judgment motion are untimely. SeeExcavators Erectors, Inc. v. Bullard Engineers,Inc., 489 F.2d 318, 320 (5th Cir. 1973); Fehlhaber v.Fehlhaber, 681 F.2d 1015, 1030 (5th Cir. 1982); BallyExport Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir. 1986); Grumman Aircraft Eng'g Corp. v. RenegotiationBd., 482 F.2d 710, 721 (D.C. Cir. 1973), rev'd on othergrounds, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57
(1975).
However, this Court recently decided a case analogous to the instant case involving the introduction of new evidence in a post-judgment motion. Moore v. Glover, 501 So.2d 1187
(Ala. 1986). In that case the Court held that when new — as opposed to newly discovered — evidence was first introduced in a post-judgment motion and no reason or justification was given for failing to present the evidence while the summary judgment motion was pending, the trial judge could not consider the new evidence. Moore, 501 So.2d at 1189. Nevertheless, if the plaintiff had "offered a proper explanation for his failure to offer that additional evidence in response to defendant's motion for summary judgment, the trial court could have considered it in deciding whether to amend or vacate its entry of summary judgment."Id. (emphasis supplied). Furthermore, "[a]ny reasonable explanation of the party's failure to offer evidence in response to a motion for summary judgment [would] suffice, but this does not mean that under the guise of a Rule 59(e) motion a party [could] belatedly submit available evidence in opposition to a motion for summary judgment." Moore, 501 So.2d at 1191 (Torbert, C.J., concurring specially).
Given the analogous situations in Moore and the instant case, we conclude that a trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so. *Page 1370 
We will reverse only if the trial court abuses that discretion.
Based on the record before this Court on appeal, we conclude that there was no justification given by Green Tree for failing to raise the argument prior to its post-judgment motion. Therefore, the trial court correctly refused to alter, amend, or vacate its order granting a summary judgment in favor of the Blalocks.
For the foregoing reasons, the judgment is due to be affirmed. Nevertheless, we will address the substantive issue raised on appeal.
 II.
The second issue is whether the trial court properly granted a summary judgment on the ground that Furr was a foreign corporation that was not qualified to do business in Alabama. Alabama's "door-closing statute" states:
 (a) All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity. . . .
Ala. Code 1975, § 10-2A-247(a). The purpose of this section is to provide some power for the State to protect Alabama residents from possible abuse by uncontrolled foreign corporations. This section of the Code is part of a statutory scheme that requires foreign corporations to receive a certificate of authority to do business in this State before transacting business here. See § 10-2A-226 et seq. Failure to secure such a certificate means that the foreign corporation cannot enforce a contract entered into in this State. § 10-2A-247(a). Although the statute states that the contract is automatically void, in practice the contract is merely voidable at the option of the Alabama resident. However, businesses engaged in interstate commerce are protected by the Commerce Clause in the United States Constitution, U.S. Const. Art. 1, § 8, cl. 3, and are therefore immune from the requirements of § 10-2A-247(a).
In applying § 10-2A-247(a), the initial determination must be whether the company is engaged in interstate or intrastate commerce. See Johnson v. M.P.L. LeasingCorp., 441 So.2d 904, 906 (Ala. 1983), citing FirstInv. Co. v. McLeod, 363 So.2d 774, 777 (Ala.Civ.App. 1978). The law distinguishing these two forms of commerce is often unclear. Furthermore, this Court has admitted that there has been some confusion between the test for qualifying to do business in Alabama pursuant to § 10-2A-247(a) and the "minimum contacts" rule for determining whether there has been a proper service of process. See Johnson, 441 So.2d at 906.
Nonetheless, in determining whether a foreign corporation is doing business in Alabama within the meaning of § 10-2A-247(a), courts are flexible and decide each case on its own facts. See Wallace Const. Co. v. Industrial BoilerCo., 470 So.2d 1151, 1153 (Ala. 1985), citing PufferMfg. Co. v. Kelly, 198 Ala. 131, 73 So. 403 (1916). Generally, "a single act of business" is sufficient to bring a foreign corporation within the purview of "doing business" in Alabama, though acts such as delivering materials or soliciting business are generally not enough to constitute "doing business." See Kentucky Galvanizing Co. v. Continental GasCo., 335 So.2d 649 (Ala. 1976) (delivery of guardrails not intrastate activity); Johnson, supra (delivery of paper copiers not intrastate activity); Wallace, 470 So.2d at 1155 (delivery and installation of a boiler not intrastate activity, but incidental to interstate sale of the boiler).
One area of business is quite clearly defined as intrastate, rather than interstate, activity. This Court has previously held that "labor is not an article of commerce, nor is the agreement to supply it, nor the execution of the agreement, an act of commerce." Computaflor v. N.L. Blaum Const.Co., 289 Ala. 65, 68, *Page 1371 265 So.2d 850, 852 (1972), citing American Amusement Co. v.East Lake Chutes Co., 174 Ala. 526, 530, 56 So. 961, 963
(1911). A construction contract supplying both material and labor is an example of the type of contract that is considered intrastate. See Sanjay, Inc. v. Duncan Const. Co.,445 So.2d 876, 879 (Ala. 1983) (sale, delivery, and supply of labor and management to construct prefabricated building is intrastate activity); Computaflor, supra, (sale, delivery, and labor to construct a gymnasium floor are intrastate activities); Cadden-Allen, Inc. v. Trans-LuxNews Sign Corp., 254 Ala. 400, 48 So.2d 428 (1950) (sale, installation, maintenance, repair for a period of one year, and removal of signs are intrastate activities); Calvert IronWorks, Inc. v. Algernon Blair, Inc., 284 Ala. 655,227 So.2d 424 (1969) (sale, delivery, and erection of steel are intrastate activities).
In each of those cases, the provisions for labor and construction made the contract one involving intrastate commerce. However, not every contract including labor is automatically deemed to be one involving intrastate activity. The contract in Wallace, supra, involved the sale of a complex boiler and an agreement for the seller/manufacturer to provide the labor to assemble, install, adjust, and start-up the boiler. The Court held that the inclusion of labor and construction in the contract was both "necessary and incidental to the interstate sale of the boiler itself"; therefore, the contract was not deemed to be one involving intrastate activity. Wallace, 470 So.2d at 1155; see also, Puffer Mfg., supra.
Thus, the inclusion of labor in the Furr-Blalock contract would not constitute intrastate activity if it was "incidental to" the interstate activity. The Furr-Blalock contract was entered into in Alabama and the work was to be performed in Alabama. It was not only for the sale of a mobile home, but it was also for the supply of materials and labor to correct the major construction defects in the mobile home. The purchase price of the mobile home was $16,440.97, but the labor and materials necessary to repair the defects in the mobile home were estimated to cost $2,778.94.
It is highly unlikely that Furr could have obtained the full $16,440.87 purchase price if it had not agreed to provide the materials and labor for the construction and repairs. In that respect, the Furr-Blalock contract can be separated into a contract for the sale of the mobile home in its defective condition, and a contract to supply the materials and labor to construct and repair the mobile home.[1] In effect, then, the purchase price included the cost of the construction and repairs, which clearly could have been done by someone other than Furr. Although it is not a major portion of the price, we conclude that it was substantial enough that it was not merely "incidental" to the sale of the mobile home.
Similarly, if the inclusion of labor is "necessary" to the interstate activity, then the contract may not be considered as one involving intrastate activity. For example, inWallace, supra, the boiler being sold was highly technical and complex. Proper installation of the machine required persons with knowledge about the particular machine and its parts, as well as its peculiarities. The boiler was not sold as a preconstructed unit because much of the "construction" could be accomplished only at the site where the boiler was to be installed. Furthermore, the way in which the boiler was constructed and installed determined how well it would work; therefore, it was in the best interest of both the seller and the customer to have the manufacturer install the machine. It was technically possible for someone other than the manufacturer/seller to supply the labor to install and assemble the machine; nevertheless, given the nature of the product, the manufacturer/seller was in the best position to do so. It is this element that made supplying the labor for installation of the machine necessary to the interstate sale. It is also this element that distinguishes the Furr-Blalock contract and sale from the contract and sale in Wallace, supra. Unlike the Wallace contract, the repairs on the mobile home could have been handled by almost *Page 1372 
any competent contractor and did not require the special expertise of the manufacturer/seller.
For the foregoing reasons, we conclude that there was no evidence creating a genuine issue of material fact concerning whether Furr was engaged in intrastate commerce and that the Blalocks were entitled to a judgment as a matter of law. The inclusion of labor and construction in the contract, which were neither necessary nor incidental to the interstate sale of the mobile home, clearly brought the Furr-Blalock contract within the purview of intrastate commerce and, thus, § 10-2A-247(a) is applicable. Because we conclude that supplying labor is an intrastate activity, we pretermit discussion of whether the actual sale of the mobile home constituted intrastate activity.
 III.
The only remaining question involves the application of the equitable principle set forth in § 10-2A-247(a), which states: "nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity." § 10-2A-247(a). At this time, the Blalocks are in possession of the mobile home, but they have stopped making payments on the retail installment sales contract that Green Tree now holds. Green Tree claims that it is entitled to the mobile home, or its reasonable value — $13,966.00. This Court must determine whether the equitable principle stated in the foreign corporation statute requires the Blalocks to either pay for the mobile home or return it to Green Tree.
On several occasions this Court has had to answer this question, and we have consistently held that a foreign corporation is not entitled to recover under any theory sounding in contract. See Sanjay, Inc. v. DuncanConstruction Co., 445 So.2d 876 (Ala. 1984). Likewise, this Court has held that an unqualified foreign corporation cannot recover on a theory that is based in contract. See C C Products, Inc. v. Premier Industrial Corp., 290 Ala. 179, 275 So.2d 124 (1972).
Green Tree claims that it is not attempting to recover under a contract theory; rather, it says, it wants to recover a chattel in specie, or the reasonable value thereof. But, no matter how this particular complaint is phrased, recovery is still premised on the existence of the contract; therefore, Green Tree is not entitled to recovery.
Furthermore, if this Court does not permit Green Tree to recover the mobile home or the reasonable value thereof under a contract theory, but then permits Green Tree to recover the mobile home or its reasonable value simply because it labels the theory in some other way, then foreign corporations could easily circumvent the statute. Our prior decisions have made it clear that foreign corporations cannot circumvent the penal purpose of the statute. See Sanjay, supra.
Therefore, Green Tree is not entitled to possession of the mobile home or to the reasonable value thereof.
For the foregoing reasons, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
MADDOX, JONES, ALMON, BEATTY and STEAGALL, JJ., concur.
HOUSTON, J., recused.
TORBERT, C.J., and SHORES, J., not sitting.
[1] For instance, an in-state contractor could have benefited from this work.