I respectfully dissent. Nelson Burnett was serving as chief receiver in May 1993, when Governor Jim Folsom appointed James Dill to the office of Alabama insurance commissioner. Almost immediately after taking office, Dill fired Burnett and replaced him with Ralph Hutchinson, president and majority shareholder of National Stonehenge Corporation ("Stonehenge"), a foreign corporation not licensed to do business in Alabama. Hutchinson was to serve on a temporary basis until Dill could find a permanent replacement for Burnett.
At that time, a number of Alabama insurance companies were insolvent and in receivership, including Old Southern Life Insurance Company, National Union Life Insurance Company, Employers Insurance Company of Alabama, Inc., and Employers Life Insurance Company ("the companies"). While Hutchinson was serving as chief of the Receivership Division, he was also appointed by the trial court as receiver for these companies. Concurrently, as the majority correctly points out, "the Insurance Department retained Stonehenge to perform consulting and accounting services on behalf of" the companies' estates. 694 So.2d at 1277. On August 23, 1993, Hutchinson resigned his position as chief receiver.
On October 1, 1993, Thomas Gallion, counsel for the Insurance Department, "filed a Petition for Instructions advising the court that [Stonehenge] . . . had received approximately $78,000 of receivership funds without court approval." Brief of Appellants (case 1950180), at 2. Stonehenge subsequently repaid this amount.
On November 30, 1993, an agreement was reached for the appointment of Laura Crum as a "special master" to "make a determination as to the amounts, if any, due to be paid to [Stonehenge]." This agreement was approved by the court on December 3, 1993.
Nelson Burnett was reappointed as chief receiver on January 23, 1995. On March 16, 1995, the special master filed a report in which she recommended that "no more payments be made to Stonehenge." She "based her recommendation on the fact that Stonehenge was a foreign corporation [that] had not qualified to do business in Alabama." 694 So.2d at 1278.
Her recommendation received disparate treatment by the trial courts in Montgomery and Jefferson Counties, from which these appeals come. Montgomery Circuit Judge Charles Price rejected the report and ordered payment to Stonehenge in the amount of $31,000. Jefferson Circuit Judges Marvin Cherner and Jack Carl accepted the special master's report and disallowed payments sought by Stonehenge. The majority reverses the judgment of the Montgomery Circuit Court and affirms the judgments of the Jefferson Circuit Court.
The majority relies solely on the authority of Ala. Code 1975, § 10-2A-247, which was repealed by Act No. 94-245, 1994 Ala. Acts 457. Section 10-2A-247(a) provided:
 "(a) All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section *Page 1281 shall abrogate the equitable rule that he who seeks equity must do equity; provided, that the failure of a foreign corporation to obtain a certificate of authority shall not impair the validity of any contract or agreement heretofore or hereafter entered into and consisting of a mortgage upon real property or an interest in real property in this state, and the note secured thereby, where the mortgage is insured by the Federal Housing Administration or guaranteed by the Veterans Administration, if said foreign corporation shall have thereafter obtained a certificate of authority. In all actions against such foreign corporation, or against any person claiming under such foreign corporation by virtue of such void contract, the foreign corporation or such person claiming under it shall be held to be estopped from setting up the fact that the contract or agreement was so made in violation of law. In all actions against foreign corporations which have not obtained a certificate of authority, the summons or other process may be served upon the officer, agent or employee of the foreign corporation who acted for or represented such foreign corporation in making the contract or agreement sued upon."
(Emphasis added.)
In discussing the policy and purpose of this statute, this Court has said: "The purpose of this section is to provide some power for the State to protect Alabama residents from possible abuse by uncontrolled foreign corporations. . . . Failure to secure . . . a certificate means that the foreign corporation cannot enforce a contract entered into in this State." GreenTree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370
(Ala. 1988) (emphasis added). In Sea Scaping Constr. Co. v.McAtee, 402 So.2d 919, 921 (Ala. 1981), we stated that the statute embodied " 'public policy[, which was] clearly written into our law in order that foreign corporations may be subjectto the process of our courts, thus affording mutuality of remedy' " (emphasis added). As a factor in its conclusion that Stonehenge should receive payment, the Montgomery Circuit Court determined that Stonehenge had voluntarily subjected itself to the jurisdiction of the court and, thus, that mutuality of remedy was afforded, satisfying the public policy of the statute.
Stonehenge relies on the "equity" proviso, which is emphasized in the quotation above. Specifically, it contends that this is an equitable proceeding and that it is seeking only payment of "those fees approved by the circuit court in the insolvency proceeding." Brief of Appellee (in case1950180), at 8. This Court has stated that "A receiver is a representative or arm of the court." Sullivan Timber Co. v.Black, 159 Ala. 570, 48 So. 870 (1909). "A receiver acts onbehalf of the court and is under its supervision, direction,and control." American Benefit Life Ins. Co. v. Ussery,373 So.2d 824, 828 (Ala. 1979) (emphasis added).
It is not a point of minor significance that the State of Alabama, through its Insurance Department, secured the services of Stonehenge and has received the benefit of its services directed toward the insolvent companies. To allow the State of Alabama to refuse to pay a corporation, which it hired to act as a receiver — under the direction of, and as arepresentative of, its courts — seems not only peculiarly inequitable, but also inconsistent with, and outside of, the purposes of this statute as we have declared them.
In my opinion, the majority reads § 10-2A-247(a) too broadly. Consequently, I respectfully dissent.