MURDOCK, Justice.
Nawas International Travel Service, Inc. (“Nawas”), a business incorporated in New York and having its principal offices in Connecticut, and its executive vice president George Khoury, a Connecticut resident, petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying their motion to dismiss the complaint of plaintiffs Michael Kelley and Jackie Kelley, who are Alabama residents, on the basis of an outbound forum-selection clause. We grant the petition.

I. Facts and Procedural History

Nawas is an international travel-service company that advertises itself as offering “quality Christian tours since 1949.” Through members of their church, First Baptist Church Montgomery, the Kelleys heard about a trip to Israel being offered by Nawas, described as a tour of “the Holy Land,” that would take place between February 21 and March 2, 2009. The Kelleys requested a brochure from Nawas concerning the trip, and Nawas provided them with a brochure that contained a description of the excursion and a reservation form with terms and conditions.[1] The “General Conditions” portion of the reservation form contains a statement in bold print that provides as follows: “Payment of deposits by tour participants indicates acceptance of the above terms and General Conditions. The venue for any dispute is Fairfield County, Connecticut. The laws of the State of Connecticut will apply.” The Kelleys returned a completed reservation form with payment for the trip.
The tour group, including the Kelleys, embarked on the trip as planned on February 21, 2009, with a transatlantic flight from Atlanta, Georgia, to Tel Aviv, Israel. The main activity scheduled for February 24, 2009, was a boat ride across the Sea of Galilee. Nawas had contracted with Kin-nereth Sailing Company, Ltd. (“Kinner-eth”), to conduct the boat tour. The Kel-leys allege that during the boat ride the Kinnereth employees responsible for steering the boat failed to pay attention to the direction of the boat, which resulted in the boat striking rocks near the shoreline. The force of the crash caused Mr. Kelley to be thrown against a wall of the boat on which was a sharp metal hook. Mr. Kelley’s head struck the hook, cutting him below the temple, in front of his right ear, and down his face to his jaw. According to the Kelleys, the injury produced profuse bleeding from the gash on Mr. Kelley’s face, and he sustained a concussion that caused blurred vision and loss of memory. Mr. Kelley received medical treatment for his injuries at two different hospitals in Israel.
After Mr. Kelley had received treatment for his injuries, the Kelleys returned to the tour, though they allege they were unable to enjoy any of it because of Mr. Kelley’s injuries. Sometime after the incident but *826 before the tour ended, George Khoury telephoned the Kelleys from his office in Connecticut to express his concern for them. The Kelleys allege that Khoury represented that Nawas would take care of any expenses the Kelleys incurred as a result of the accident. The Kelleys also allege that when Olga Nawas, the head of the Nawas office in Jerusalem, stopped by to check on Mr. Kelley, she stated that Nawas would take care of any expenses the Kelleys sustained as a result of Mr. Kelley’s injuries.
On May 13, 2010, the Kelleys filed a complaint in the Montgomery Circuit Court against Nawas, Khoury, and Kinner-eth, alleging breach of contract, breach of express warranty, negligence and/or wantonness, fraud, and the tort of outrage, and, as to Nawas and Khoury, negligent hiring, selection, or retention of a service provider. On June 21, 2010, defendants Nawas and Khoury filed a motion to dismiss the complaint based upon the forum-selection clause, which states that any action against Nawas must be filed in Fair-field County, Connecticut. Following a response from the Kelleys and a hearing on the motion, the Montgomery Circuit Court on August 4, 2010, entered an order denying the motion to dismiss filed by Nawas and Khoury. The circuit court did not explain its reasons for its ruling.
On September 14, 2010, Nawas and Khoury filed the present petition for a writ of mandamus addressing the Montgomery Circuit Court’s August 4, 2010, order. Subsequently, the Kelleys obtained service on Kinnereth in Israel; Kinnereth, in turn, filed its own motion to dismiss on October 13, 2010. On November 4, 2010, the circuit court granted Kinnereth’s motion to dismiss, thus excusing it from the Kelleys’ action.
II. Standard of Review
“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).’
“Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala.2000). In Ex parte CTB, this Court established that a petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an ‘outbound’ forum-selection clause when it is presented in a motion to dismiss. Indeed, an attempt to seek enforcement of the outbound forum-selection clause is properly presented in a motion to dismiss without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P., for contractually improper venue. Additionally, we note that a party may submit evidentiary matters to support a motion to dismiss that attacks venue.”
Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala.2001).

III. Analysis

Nawas and Khoury contend that the circuit court should have enforced the forum-selection clause because the Kelleys contractually agreed to it as part of the terms and conditions of the tour trip provided by Nawas. They argue that the Kelleys did not offer a defense that counsels in favor of nonenforcement of the clause.
This Court has stated that
“ ‘[a]n outbound forum-selection clause is enforceable unless the challenging party can establish that enforcement of the clause would be un *827 fair on the basis that the contract “‘[w]as affected by fraud, undue influence, or overweening bargaining power or ... enforcement would be unreasonable on the basis that the [selected] forum would be seriously inconvenient.’” The burden on the challenging party is difficult to meet. Ex parte CTB, [782 So.2d 188 (Ala.2000)]. See also Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351 (Ala.1997).’ ”
Ex parte Soprema, Inc., 949 So.2d 907, 912 (Ala.2006) (quoting Ex parte D.M. White Constr. Co., 806 So.2d at 372).
The Kelleys did not contend before the circuit court — nor do they argue before this Court — that enforcement of the subject forum-selection clause would be unfair because the clause was the result of fraud, undue influence, or overweening bargaining power. Instead, they contend that enforcement of the clause would be unreasonable on the basis that the selected forum — Fairfield County, Connecticut— would be seriously inconvenient.
“In order to demonstrate that the chosen forum is seriously inconvenient, the party challenging the clause must show that a trial in that forum would be so gravely difficult and inconvenient that the challenging party would effectively be deprived of his day in court. Ex parte Northern Capital Res. Corp., 751 So.2d [12] at 15 [ (Ala.1999) ].
“ “When an agreement includes a clearly stated forum-selection clause, a party claiming that clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five factors: (1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a clear indication whether the chosen forum is reasonable.’ ”
Ex parte Rymer, 860 So.2d 339, 342-43 (Ala.2003) (quoting Ex parte Northern Capital Res. Corp., 751 So.2d 12, 15 (Ala.1999)).
We note preliminarily (1) that Nawas is a business entity while the Kelleys are not, (2) that the subject matter of the contract is not such as to be a significant factor in determining whether the outbound forum-selection clause should be enforced, (3) that the “chosen forum” has “inherent advantages” for one party but not for the other, and (4) that the parties should have been able to understand the agreement as it was written. As to the fifth factor listed in Rymer, we note that when the Kelleys decided to travel to Israel, they took the risk that one of them might be injured in an unexpected, tortious incident and the concomitant risk that, to the extent this might occur at the hand of an Israel-based tortfeasor, they would have to seek relief from that tortfeasor in Israel. That fact has not changed since the Kelleys entered into the agreement with Nawas. As to the risk that any incident occurring in Israel might give rise to a claim by the Kelleys against Nawas and Khoury, the Kelleys agreed in advance that any such claim would have to be pursued in Connecticut. That too has not changed.
The primary focus of the Kelleys’ argument to this Court is their assertion *828 that the enforcement of the forum-selection clause in their agreement with Nawas would place “a serious burden” upon them. They argue that
“[d]ue to the dismissal of Kinnereth, [the Kelleys] now have no choice but to pursue their case against [Kinnereth] in Israel. Were this court to rule that the alleged forum selection clause in the [reservation form] were valid and enforceable, [the Kelleys] would have no choice but to pursue [Nawas and Khoury] in Connecticut. It defies logic to argue that this scenario does not create such a serious burden that the [Kel-leys] would essentially have to give up and lose their day in court as opposed to pursuing this case in those two far away jurisdictions.”
Kelleys’ brief, pp. 11-12.
It is true that this Court has held that “‘[t]he enforcement of a forum-selection clause creates a serious inconvenience if it would result in two lawsuits involving similar claims or issues being tried in separate courts.’ ” Ex parte Leasecomm Corp., 886 So.2d 58, 63 (Ala.2003) (quoting Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc., 646 N.W.2d 904, 909 (Minn.Ct.App.2002)). The Kelleys argue that enforcing the forum-selection clause would be seriously inconvenient because it would force them to litigate the same issues that arise out of the same set of facts in two different forums. In particular, they highlight and attempt to draw parallels between the facts of this case and the facts presented in F.L. Crane & Sons, Inc. v. Malouf Construction Corp., 953 So.2d 366 (Ala.2006). In Malouf Construction, this Court explained the situation and reasoned as follows:
“Malouf argues that just such a serious inconvenience would exist in this case if we ordered the trial court to enforce the outbound forum-selection clause. In the underlying action, the Association has asserted claims against Malouf arising from Maloufs general construction of the Palm Beach Condominiums; Malouf has, in turn, brought third-party claims against Crane and several other subcontractors. Malouf argues that enforcement of the outbound forum-selection clause in this case would move the litigation of the claims between Malouf and Crane to Mississippi, where, Malouf argues, they would be litigating claims and issues identical to those being tried in Alabama between Malouf and the Association and between Malouf and the other subcontractors, all of which arose out of the same construction job as did Mal-oufs claims against Crane. If its claims against Crane are transferred, Malouf argues, it would be subject to duplicative discovery and litigation.
“Crane asks us to transfer the claims involving Malouf and Crane to Mississippi, while all the other related claims remain in Alabama. Crane argues that the action brought in Alabama by the Association involves claims and parties 'wholly unrelated to anything Crane did in the construction of Palm Beach Condominiums,’ and that the action in Mississippi would involve the ‘sole issue’ whether Crane properly completed its work during the construction. Crane is correct that the action brought by the Association involves other parties unrelated to Maloufs third-party action against Crane and therefore involves issues that may not be present in the third-party action, but the opposite is not necessarily true. Maloufs claims against Crane involve issues that will be litigated in the Association’s action. Both cases will likely involve interpretation of the same contract tetmis, and Maloufs testimony as to its activities during construction will be necessary in both actions. Litigation of the same *829 issues, arising out of the same construction project, could therefore cause Mal-ouf‘serious inconvenience.’ ”
953 So.2d at 373-74 (emphasis added).
In Malouf Construction, the Court’s af-firmance of the trial court’s decision not to enforce the forum-selection clause resulted in both actions remaining in the same forum. That would not happen here. The Kelleys argue that it would be seriously inconvenient to litigate their action in two different forums as a result of enforcing the forum-selection clause, even though the circuit court’s dismissal of Kinnereth from their Alabama action means that they will be forced to litigate in two separate forums regardless. The only question is whether one of those forums will be Alabama or Connecticut. In other words, refusing to enforce the subject forum-selection clause will not result in “duplicative discovery and litigation” or the duplicative expenditure of judicial resources, any more than if the Kelleys could try their action against Nawas and Khoury in Alabama. Therefore, we do not find that Malouf provides a persuasive rationale for not enforcing the forum-selection clause in the present case.
Nawas and Khoury draw parallels between the forum-selection clause at issue in this case and the forum-selection clause in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), in explaining why they believe enforcement of the forum-selection clause is reasonable. In Harden v. American Airlines, 178 F.R.D. 583 (M.D.Ala.1998), the Federal District Court for the Middle District of Alabama succinctly summarized the holding in Shute:
“In Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court enforced a form forum selection clause printed on a cruise ticket, and held that it was reasonable. The particular forum clause at issue was strikingly similar to the present: (1) it was printed on the back of the ticket (which was not furnished to the Plaintiffs until after payment); (2) it applied to ‘all disputes and matters whatsoever arising under, in connection with or incident to this Contract;’ and (3) it chose a forum several thousand miles away from the Plaintiffs’ home. Id. at 587-88, 111 S.Ct. at 1524-25. The Court held that the clause met with fundamental fairness, because of its connection to the Defendants’ principal place of business, and the lack of any evidence of fraud or bad faith. Id. at 595, 111 S.Ct. at 1528. Further, the Court noted that such clauses would be permissible in similar instances for a number of reasons:
“ ‘First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause ... benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.’
*830 “Id. at 593-94, 111 S.Ct. at 1527 (internal citations omitted).”
178 F.R.D. at 586 (emphasis added). Na-was and Khoury note that similar reasons support the reasonableness of the forum-selection clause in this case because Nawas is a travel agency whose principal place of business is in the state named as the forum in the forum-selection clause.
The Kelleys argue in the alternative that Nawas does not have standing to enforce the forum-selection clause because of Alabama’s door-closing statute, § 10-2B-15.02(a), Ala.Code 1975.
“Section 10-2B-15.02(a) provides:
“ ‘(a) A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40 may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.’
“ ‘This section of the Code is part of a statutory scheme that requires foreign corporations to receive a certificate of authority to do business in this State before transacting business here.’ Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370 (Ala.1988). ‘Failure to secure such a certificate means that the foreign corporation cannot enforce a contract entered into in this State.’ 525 So.2d at 1370. ‘A foreign corporation that has not been authorized to do business in Alabama is not barred from enforcing its contracts in the courts of this state, however, “unless the business conducted here by [the] non-qualified corporation[] is considered ‘intrastate’ in nature.” ’ Building Maintenance Pers., Inc. v. International Shipbuilding, Inc., 621 So.2d 1303, 1304 (Ala.1993) (quoting Wise v. Grumman Credit Corp., 603 So.2d 952, 953 (Ala.1992)). This is because ‘businesses engaged in interstate commerce are protected by the commerce clause in the United States Constitution, U.S. Const., Art. I, § 8, cl. 3, and are therefore immune from the effects of the “door closing” statutes.’ Stewart Mach. & Eng’g Co. v. Checkers Drive In Rests, of N. America, Inc., 575 So.2d 1072, 1074 (Ala.1991). Because TradeWinds concedes that it was not qualified to do business in Alabama at the time the contract was entered into, or, for that matter, at the time of performance under the contract, ‘the focus of this case is on whether [TradeWinds] was engaged in interstate or intrastate commerce; this issue is ultimately decided on a case-by-case basis.’ Stewart Mach. & Eng’g, 575 So.2d at 1074. ‘[I]n determining whether a corporation is doing business in Alabama within the meaning of § [10-2B-15.02], courts are flexible and decide each case on its own facts.’ Green Tree Acceptance, 525 So.2d at 1370.
“... Alabama caselaw also holds that § 10-2B-15.02, Ala. Code 1975, is applicable to those entities that engage in intrastate business and fail to register. See Brown v. Pool Depot, Inc., 853 So.2d 181, 185 (Ala.2002) (‘ “It has been held that a foreign corporation doing business in this state without qualifying cannot use our courts to enforce its contracts. Continental Telephone Corp. v. Weaver, 410 F.2d 1196 (5th Cir.1969). Alabama Const. art. XII, § 232, and *831 §§ 10-2A-247 and 40-14-4, Code 1975 [now codified as 10-2B-15.02, Ala.Code 1975], prohibit a nonqualified foreign corporation from enforcing a contract made in Alabama if it is doing business in Alabama.” ’ (quoting Competitive Edge, Inc. v. Tony Moore Buick-GMC, Inc., 490 So.2d 1242, 1244 (Ala.Civ.App.1986))). Thus, whether § 10-2B-15.02 applies to a contract involving a foreign corporation turns on whether the foreign corporation, whether or not engaged in interstate commerce, is engaged in intrastate business.”
TradeWinds Envtl. Restoration, Inc. v. Brown Bros. Constr., LLC, 999 So.2d 875, 878-79 (Ala.2008) (emphasis added).
Nawas and Khoury concede that Nawas “is not registered, qualified, or licensed to do business in Alabama.” Consequently, enforcement of the forum-selection clause in Nawas’s agreement with the Kelleys depends upon whether the subject of the agreement involves intrastate business.[2]
Khoury submitted an affidavit to the circuit court in which he stated that “Na-was did not specifically target Alabama residents to attend its trips. Rather, residents of multiple states attend the various tours that Nawas offers.” The Kelleys did not offer evidence to contradict this assertion. The agreement at issue concerns an international tour. On the evidence presented, the nature of the business Nawas conducts is interstate in nature; it involves providing travel and touring services to customers throughout the United States. Therefore, because the subject business is interstate rather than intrastate in nature, Nawas is not subject to the strictures of Alabama’s door-closing statute, and its contract with the Kelleys — including the forum-selection clause — is enforceable.
In sum, the Kelleys accepted a contract with Nawas that contained an outbound forum-selection clause. The clause is presumptively enforceable unless the Kelleys could provide a reason it should not be enforced against them. The arguments the Kelleys made in this case as to inconvenience and Alabama’s door-closing statute fail to undermine the enforceability of the forum-selection clause. Accordingly, we grant the petition and order the circuit court to dismiss the Kelleys’ action.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.

. The Kelleys allege that Nawas had worked with members of the church to create the brochure advertising the trip, and they cite the fact that the brochure contains messages from Dr. Dale Huff and Reverend Harold Hancock, who, they allege, are members of First Baptist Church Montgomery, as confirmation of this allegation. Nawas alleges that it ‘‘has never heard of the First Baptist Church in Montgomery, Alabama and was unaware that [the Kelleys] were members of this church until [the Kelleys] filed their Complaint.” Neither the Kelleys nor Nawas provide affidavits or other evidence, however, substantiating their competing allegations. In any event, enforcement of the forum-selection clause renders the truth or falsity of these allegations meaningless.

. "The party asserting the nonqualification defense has the burden of proof on the issue. Kyle v. Central Nat’l Bank, 226 Ala. 257, 146 So. 801 (1933). Once a party presents evidence establishing that a corporation is a nonqualified corporation, the burden shifts to the nonqualified corporation to present evidence establishing that it is exempt from § 10-2B-15.02(a). A non-qualified corporation establishes that it is exempt from § 10-2B-15.02(a) by showing that its activities are interstate as opposed to intrastate. J.W. Hartlein Constr. Co. [v. Seacrest Assocs., L.L.C.], 749 So.2d [459] at 462 [(Ala.Civ.App.1999)]."
Casa Invs. Co. v. Boles, 931 So.2d 53, 58 (Ala.Civ.App.2005).