MURDOCK, Justice.
PT Solutions Holdings, LLC (“PT Solutions”), petitions this Court for a writ of mandamus seeking an order directing the Barbour Circuit Court to vacate its March 15, 2016, order denying PT Solutions’ motion to dismiss the underlying complaint filed by Laurie B. White based on an outbound forum-selection clause and to grant the motion to dismiss. We grant the petition.
I. Facts
PT Solutions states that it is a Georgia-based company that operates physical-therapy clinics.[1] In 2006, PT Solutions *39 hired White as the clinic director of its Eufaula, Alabama, location, which is located near the Alabama-Georgia border. In September 2014, PT Solutions revised the employment agreements for its clinic directors. PT Solutions states that the purpose of the revision was to make those contracts uniform and easier to administer. The new contract consisted of a “Letter Agreement” (“the letter agreement”) that stated the terms of compensation and a “Noncompetition and Nonsolicitation Agreement” (“the noncompetition agreement”).
One of the changes implemented in the new contract was a new bonus plan. The letter agreement provided that clinic directors were eligible for annual bonuses, the target amount of which is prorated and paid on a monthly basis, and the actual amount is finalized at the end of each year. In its opening paragraph, the letter agreement provided: “If you sign and return this Letter Agreement no later than 11/3/2014, this Letter Agreement will be retroactively effective as of September 1, 2014.” In a subsequent paragraph, the letter agreement provided: “As of September 1, 2014, you will be eligible to participate in an annual performance bonus program for each calendar year that you are employed by [PT Solutions]. Eligibility for Bonus compensation requires execution of the ‘Noncompetition and Nonsolicitation Agreement’ attached hereto and incorporated by reference herein ....” The final paragraph of the letter agreement provided: “If you wish to accept this offer (including the attached Noncompetition and Nonsolicitation Agreement) on the terms described above, please sign and date this Letter Agreement and return it to [PT Solutions] no later than 11/03/14.”
In part, the noncompetition agreement prohibited a clinic director from,
“either directly or indirectly, participating] in any Restricted Business (as such terms are defined below). For purposes of this offer of employment and except as allowed above, (a) the term ‘Participate’ means to have any direct or indirect interest, whether as an officer, director, employee, partner, sole proprietor, agent, representative, independent contractor, consultant, franchisor, franchisee, creditor, owner or otherwise ...; (b) the term ‘Restricted Business’ means any enterprise, business or venture within 25 miles of any location where you provided services during your employment with [PT Solutions] and where you ... provided services at the time of *40 •termination, which is engaged in the Business or a business identical to or engaged in any portion of the Business of [PT Solutions].”
The noncompetition agreement also contained a choice-of-law and outbound forum-selection clause,[2] which provided:
“This Agreement has been entered into under and shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflict of laws provisions. You agree that a Superior Court in Fulton County, Georgia, shall be the sole and exclusive .jurisdiction and venue for all 'disputes between the , parties under this Agreement. Employee hereby irrevocably consents to jurisdiction and venue of such court for adjudication of all disputes between the parties under this Agreement and waives any objections or defenses to jurisdiction or venue in any such proceeding.”
(Emphasis added.)
PT Solutions provided White with the letter agreement and-the noncompetition agreement on October 27, 2014. After that date, White regularly communicated with PT Solutions to discuss the terms of the new contract. According to an affidavit from Amy Scott, PT Solutions' director of Human Resources, around November 15, 2014, White met with senior administration for PT Solutions in Callaway Gardens, Georgia, to discuss the new contract, the bonus plan, and the fact that she would need to sign both the letter 'agreement and the noncompetition agreement in order to participate in the bonus program! On December 29, 2014, Scott e-mailed White to remind her that she needed to execute the new contract by December 31, 2014, ■ in order to be eligible for the bonus program. White responded the same day with an email in which she stated that she was concerned that the bonus program was based on ■
“units not visits for our clinic which could mean a 20% pay cut at the end of thé year. Our previous bonus structure worked for our clinic because it took into account the actual profit at the ¿nd of the year and not necessarily the unit goal. While we'may not meet the unit goál due to our Medicare population, we try to market cheaper, work with less staff and keep our expenses lower to increase overall profit. I have not received an incentive based on units since July[;] however, [I] have received an incentive based on visits almost every month prior to the new contract. I am eager to sign a contract that works.for all, please let me know your thoughts,”
According to Scott, the next day White met with PT Solutions’ director of Clinical Operations Danny Mayhan for a final discussion about her bonus structure, On December 31, 2014, White signed the letter agreement and the noncompetition agreement. White acknowledges that she signed both portions of the new contract on that date.
■ According to PT Solutions, it paid White a $6,500 year-end bonus for 2014, which she would not have received absent her execution of the letter agreement and the noncompetition agreement. PT Solutions also says that White received subsequent monthly bonus payments in 2015, for a total of $10,666 in bonuses received under the new contract. White denies that she was paid bonuses under the new contract.
On September 9, 2014, Eufaula Physical Therapy (“EPT”), a physical-therapy com *41 pany located less than half a mile from PT Solutions’ Eufaula clinic, was formed. On June 26, 2015, White voluntarily resigned her position as clinic director of PT Solutions’ Eufaula clinic and became clinic director for' EPT. She also recruited the office manager and two physical therapists who were working at PT Solutions’ Eufau-la clinic to come work at EPT. A PT Solutions’ customer, Medical Center Barbour, terminated its contract with PT Solutions, providing as its reason that White at EPT had made a very good offer to take over PT Solutions’ work.
Because of White’s actions on behalf of EPT, PT Solutions’ counsel, on December 9, 2015, sent. White a cease-and-desist letter in which he asserted that White had violated the noncompetition agreement.
In response to the cease-and-desist letter, on December 21, 2015, White sued PT Solutions and fictitiously named defendants in the Barbour Circuit Court (“the Alabama action”); she sought a judgment declaring that the noncompetition agreement was unenforceable. The complaint asserted that the outbound forum-selection clause was unenforceable because: (1) the Georgia forum is 155 miles from White’s residence, which, she said, Was “unnecessarily and avoidably disruptive and burdensome” to her; (2) White did not have sufficient contacts with Fulton County, Georgia; (3) “[t]he course of dealings, negotiations, and employment- all occurred within the Eufaula division' of the Circuit Court of Barbour County, Alabama”; (4) under Alabama law the noncompetition agreement cannot be enforced against a “professional,” and White qualifies as a professional because Alabama law recognizes physical therapists as professionals; therefore, White argues, the noncompetition agreement violates the public policy of Alabama; and (5) by its terms the letter agreement was effective only if it was signed by November 3, 2014, and White did not sign it until December 31, 2014; therefore, Whites argues, the new contract was not enforceable.
On January 28, 2016, PT Solution's sued White in the Fulton County, Georgia, Superior Court alleging that she had breached the noncompetition agreement, had violated the Georgia Uniform Trade Secrets Act, and had tortiously interfered with PT Solutions’ business relationships (“the Georgia action”).
On February 1, 2016, PT Solutions filed a motion in the Barbour Circuit Court to dismiss the Alabama action, asserting improper venue and lack of subject-matter jurisdiction based on the forum-selection clause. On March 2, 2016, White filed an answer and a motion to dismiss the Georgia action. On March 15, 2016, the circuit court denied PT Solutions’ motion to dismiss the Alabama action. In the same order, the circuit court set the case for trial on May 11, 2016.
On March 21, 2016, White filed her “First Set of Requests for Admissions and Requests for Production, and Interrogatories” in the Alabama action. The following day, White filed a motion to reduce by two weeks the period within which PT Solutions must respond to that discovery. On March 23, 2016, PT Solutions opposed White’s motion and filed a motion to stay the Alabama action in light of the fact that it was preparing to file a petition for a writ of mandamus with this Court. White filed a reply on- the following day opposing the motion to stay. ,
On March 24, 2016, PT Solutions' filed the instant petition for a writ of mandamus directing the circuit court to vacate its order denying the motion to dismiss the Alabama action and to grant the motion.
On March 29, 2016, White filed a “First Amendment to Complaint” in the Alabama *42 action in which she added a claim seeking a declaration that “[e]nforcing the forum selection clause in this case would undermine the fundamental public policy of the State of Alabama.”
On April 15, 2016, this Court ordered answers and briefs and stayed the proceedings in the Alabama action pending resolution of the petition.
II. Standard of Review
“[A]n attempt to seek enforcement of the outbound forum-selection clause is properly presented in a motion to dismiss without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P., for contractually improper venue. Additionally, we note that a party may submit eviden-tiary matters to support a motion to dismiss that attacks venue. Williams v. Skysite Communications Corp., 781 So.2d 241 (Ala. Civ. App. 2000), quoting Crowe v. City of Athens, 733 So.2d 447, 449 (Ala. Civ. App. 1999).”
Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala. 2001).
“ ‘[A] petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an “outbound” forum-selection clause when it is presented in a motion to dismiss.’ Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala. 2001); see Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala. 2000). ‘[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion.’ Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660 (Ala. 2001). ‘[T]he review of a trial court’s ruling on the question of enforcing a forum-selection clause is for an abuse of discretion.’ Ex parte D.M. White Constr. Co., 806 So.2d at 372.”
Ex parte Leasecomm Corp., 886 So.2d 58, 62 (Ala. 2003).
III. Analysis
In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the United States Supreme Court concluded that, for purposes of federal law, outbound forum-selection clauses “are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be ‘unreasonable’ under the circumstances.” This Court in Professional Insurance Corp. v. Sutherland, 700 So.2d 347, 351 (Ala. 1997), agreed with the Supreme Court’s reasoning, stating that “a forum selection clause should be enforced so long as enforcing it is neither unfair nor unreasonable under the circumstances.” The Court later expounded on this idea as follows:
“[I]t has been well established that [an outbound forum-selection] clause will be ‘upheld unless the party challenging the clause clearly establishes that it would be unfair or unreasonable under the circumstances to hold the parties to their bargain.’ Ex parte CTB, Inc., 782 So.2d [188,] 190-91 [ (Ala. 2000) ]. The showing is sufficient where it is clearly established ‘ “(1) that enforcement of the forum selection clause[] would be unfair on the basis that the contract ] [was] affected by fraud, undue influence, or overweening bargaining power or (2) that enforcement would be unreasonable on the basis that the chosen ... forum would be seriously inconvenient for the trial of the action.” ’ Id. at 191 .... ”
Ex parte Leasecomm Corp., 886 So.2d at 62-63 (emphasis omitted). The Court has noted that “[t]he burden on the challenging party is difficult to meet.” Ex parte D.M. White Constr. Co., 806 So.2d at 372.
In its motion to dismiss below, PT Solutions introduced a contract indisput *43 ably signed by White that contained an unambiguous outbound forum-selection clause that dictates that the only proper venue for a dispute between the parties is the Superior Court in Fulton County, Georgia. Therefore, PT Solutions met its initial burden of establishing that White’s action should be dismissed as having been filed in an improper venue. The burden then shifted to White to clearly establish that enforcement of the forum-selection clause would be unfair or unreasonable under the circumstances.
As we noted in the rendition of the facts, White presented several arguments as to why she believes the forum-selection clause is unenforceable. White focuses on only one of those arguments in her response to PT Solutions’ petition. Specifically, White contends that the forum-selection clause is invalid because it is contained in a noncompetition agreement that, she says, violates Alabama public policy. The components of White’s argument are as follows. First, she argues that the noncompetition agreement is a restraint on the practice of her profession of physical therapy. Second, she contends that prohibiting restraints on the practice of a profession is a fundamental public policy of the State of Alabama, citing §§ 8-1-190, 8-1-196, and 8-1-197, Ala. Code 1975, for support.[3] Third, she notes that in M/S Bremen the United States Supreme Court stated: “A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.” 407 U.S. at 15. White thus concludes that the forum-selection clause should not be enforced because the noncompetition agreement violates a fundamental public policy in this State.
The problem with this argument is that White misunderstands the statement in M/S Bremen. The Supreme Court stated that a forum-selection clause “should be held unenforceable if enforcement [of the clause] would contravene a strong public policy of the forum in which suit is brought.” Id. In other words, the Court was saying that enforcement of the forum-selection clause must contravene a state’s public policy, not that the clause should be held unenforceable if enforcement of the contract that contains the clause would contravene a state’s public policy. As one federal district court has explained: “[W]hat matters is not whether the contract as a whole violates public policy, but whether' the forum-selection clause itself violates public policy.” Fountain v. Oasis Legal Fin., LLC, 86 F.Supp.3d 1037, 1044 (D. Minn. 2015). See also Brandt v. Comtrust, Inc., No. CV06-166-S-EJL, July 28, 2006 (D. Idaho 2006) (not selected for publication in F. Supp.) (refusing to enforce a forum-selection clause because of Idaho’s strong public policy against the enforcement of such clauses); Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 (9th *44 Cir. 2000) (affirming a district court’s refusal to enforce the parties’ contractual forum-selection clause, concluding that it contravened California’s strong public policy against enforcing such clauses in franchise agreements). White’s argument goes to the enforcement of. the contract as a whole, i.e., that enforcement of the non-competition agreement would contravene a strong public policy of the State, not to enforcement of the forum-selection clause itself. “It has long been established that forum-selection clauses are not against Alabama public policy ....” Ex parte Riverfront, LLC, 129 So.3d 1008, 1015 (Ala. 2013). Therefore, the possibility that the noncompetition agreement violates Alabama public policy does not prohibit enforcement of the forum-selection clause.
White also contended below that the contract was unenforceable because she did not sign the contract until December 31, 2014, and the final paragraph of the letter agreement provided: “If you wish to accept this offer (including the attached Noncompetition and Nonsolicitation Agreement) on the terms described above, please' sign and date this Letter Agreement and return it to [PT Solutions] no later than 11/03/14.” In other words, White asserted that she did not accept the offer of the new contract in a timely manner according to its terms, and therefore the new contract never became effective. According to White, because the new contract never took effect, the forum-selection clause in the noncompetition agreement cannot be enforced.
Like White’s public-policy argument, this argument about whether the contract ever became effective challenges the contract as a whole, not the validity of the forum-selection clause. But when venue is challenged based on a forum-selection clause, as it was in this case, the .court evaluates only the validity of the forum-selection clause.
“[N]umerous courts ... have addressed the validity of a forum-selection clause before determining, the validity of a contract. as a whole. See Rucker v. Oasis Legal Fin., LLC, 632 F.3d 1231, 1237-38 (11th Cir. 2011) (treating the forum-selection clause as a severable part of the contract and analyzing its validity separately); see also Muzumdar v. Wellness Int’l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006) (reasoning that the court must decide whether it is the proper court to decide the validity of the contract before it decides the validity of the contract).”
Fountain v. Oasis Legal Fin., LLC, 86 F.Supp.3d at 1044.
“Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable as against public policy— i.e., they set out a pyramid scheme—the forum selection clauses are also void. The logical conclusion of the argument would be that the federal courts in Illinois would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all. An absurdity would arise if the courts in Illinois determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to Texas—for what? A determination as to whether the contracts are void?”
Muzumdar v. Wellness Int’l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006). “Allegations that the entire contract was procured as the result of fraud or overreaching are ‘inapposite to our [forum-selection clause] enforceability determination, which must ,.. precede any analysis of the merits [of *45 the contract’s validity].’” Afram Carriers, Inc. v. Moeykens, 145 F.3d 298, 301 (5th Cir. 1998) (quoting Haynsworth v. The Corporation, 121 F.3d 956, 964 (5th Cir. 1997) (bracketed language added in Moeykens)).
In the context of discussing allegations of fraud in a contract dispute, this Court explained the logic behind considering the validity of the forum-selection clause before analyzing the validity of the contract as a whole.
“The United States Supreme Court in Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), relying on its holding in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), addressed the enforcement of forum-selection clauses and upheld the enforceability of a forum-selection clause •when the action involved claims of fraud. In Scherk, the Court, despite the allegations of fraud, upheld the enforcement of a forum-selection clause, stating:
“‘In The Bremen we noted that forum-selection clauses “should be given full effect” when a “freely negotiated private international agreement [is] unaffected by fraud..." 407 U.S. at 13. This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.’
“417 U.S. at 519 n. 14, 94 S.Ct. 2449. The United States Court of Appeals for the Eleventh Circuit in Lipcon v. Underwriters at Lloyd’s, London, 148 F.3d 1285, 1296 (11th Cir. 1998), applied the Scherk holding, stating, ‘By requiring the plaintiff specifically to allege that the choice clause itself was included in the contract due to fraud in order to succeed in a claim that the choice is unenforceable, courts may ensure that more general claims of fraud will be litigated in the chosen forum, in accordance with the contractual expectations of the parties.’
“Thus, the proper inquiry is whether ‘the forum-selection clause is the result of fraud in the inducement in the negotiation or inclusion in the agreement of the forum-selection clause itself. If the forum-selection clause is the result of fraud in the inducement, then the fraud exception to the enforceability of the clause applies. However, if the claim of fraud in the inducement is directéd toward the entire contract, the fraud' exception to enforcement of the forum-selection clause does not apply.”
Ex parte Leasecomm Corp., 879 So.2d 1156, 1158-59 (Ala. 2003) (second emphasis, other than on “in the chosen forum,” added).
White has never contended that the forum-selection clause itself is invalid as the result of fraud, undue influence, or overweening bargaining power. Instead, she challenged the validity of the contract as a whole based on when she executed it. White is certainly entitled to argue that the contract never became effective, but the argument must be raised in the forum dictated by the forum-selection clause because the possible invalidity of the contract as a whole does not negate enforcement of the forum-selection clause.
The only argument White raised below that challenged the forum-selection clause itself was her assertion that, because the Georgia forum is 155 miles from White’s residence, litigating in the forum was “unnecessarily and avoidably disruptive and burdensome” to White. At least in regard to the facts of this case and the *46 arguments presented, we find White’s position üncompelling.
This Court has held that
“distance of travel does not establish that a forum is unreasonable. Ex parte Northern Capital Res. Corp., 751 So.2d 12 (Ala. 1999) (enforcing outbound forum-selection clause requiring that litigation be conducted in. Missouri); O’Brien Eng’g Co. v. Continental Machs., Inc., [738 So.2d 844 (Ala. 1999)] (enforcing outbound forum-selection clause requiring that litigation be conducted in Minnesota); Moseley v. Electronic Realty Assocs., 730 So.2d 227 (Ala. Civ. App. 1998)(enforcing outbound forum-selection clause requiring that litigation be conducted in Kansas); and Professional Ins. Corp., et al. v. Sutherland, 700 So.2d 347 (Ala. 1997)(enforcing outbound forum-selection clause requiring that litigation be conducted in Florida).”
Ex parte D.M. White Constr. Co., 806 So.2d at 373-74. A complaining party must cite more than mere distance to warrant negating the forum-selection clause. “ ‘Inconvenience’ sufficient to void a forum-selection clause is present where a ‘trial in that forum would be so gravely difficult and inconvenient that the challenging party would effectively be deprived of his day in court.’” Ex parte Leasecomm Corp., 886 So.2d at 62-63 (quoting Ex parte Rymer, 860 So.2d 339, 342 (Ala. 2003)).
In this case, White admitted that both PT Solutions’ Eufaula clinic and EPT’s clinic are located near the Alabama-Georgia border. White acknowledged that she treated many patients from Georgia when she worked for PT Solutions. There is also evidence indicating that White traveled to Georgia several times for business purposes during her employment with PT Solutions. Furthermore, White did not explain how the designated forum would be so “gravely difficult and inconvenient” as to deprive her of her day in court. Instead, White simply argued that “[forcing [White] to litigate in Fulton County, Georgia would ‘spread thin [her] resources and would hamper [her] ability to obtain quick, convenient, and effective relief.’ Olivier v. Merritt Dredging Co., 979 F.2d 827, 834 (11th Cir. 1992).” In short, the inconvenience to White does not rise to a level justifying negation of the forum-selection clause.
In sum, PT Solutions presented an unambiguous forum-selection clause that was contained in a contract indisputably signed by White, and White failed to present— either in this Court or in the circuit court—an ai’gument that establishes that it would be unfair or unreasonable under the circumstances to enforce the forum-selection clause. Accordingly, the circuit court exceeded its discretion in denying PT Solutions’ motion to dismiss the Alabama action.
IV. Conclusion
White failed to clearly establish that enforcement of the forum-selection clause would be either unfair or unreasonable. PT Solutions has demonstrated a clear legal right to have the action against it dismissed on the basis that venue in the Barbour Circuit Court is, by virtue of the outbound forum-selection clause, improper. The circuit court exceeded its discretion in denying PT Solutions’ motion to dismiss. We direct the court to dismiss this cause, without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P.
PETITION GRANTED; WRIT ISSUED.
Stuart, Bolin, Main, and Bryan, JJ., concur.

. The submissions from the parties indicate that PT Solutions is a business formed in Alabama that now maintains its principal place of business in Georgia. White submitted a "Business Entity” filing from the Alabama Secretary of State’s Web site that lists PT Solutions as a "Domestic Limited Liability Company” with a "registered office” at "6715 *39 Taylor Court, Montgomery Alabama 36117.” The header on the first page of the contract at issue also lists the foregoing Montgomery address for PT Solutions. In the complaint it filed in the Superior Court of Fulton County, Georgia, PT Solutions stated that it is ‘‘a limited liability company with its principal place of business at 1990 Vaughn Road, Suite 330, Kennesaw, Georgia, 30144. [PT Solutions] does business "throughout the country, including but not limited to Alabama and Georgia.” Another exhibit attached to PT Solutions’ petition is a business-information sheet from the Corporations Division of the State of Georgia that lists PT Solutions as a "Foreign Limited Liability Company” with its “principal office address” at the Georgia address mentioned in its Georgia superior court complaint. A "Certificate of Authority” from the Georgia Secretary of State states that PT Solutions "has been duly formed under the laws of Alabama and has filed an application meeting the requirements of Georgia law to transact business as a Foreign Limited Liability Company in this state.” In PT Solutions’ responses to White's "First Set of Requests for Admissions and Requests for Production, and Interrogatories,” PT Solutions states that it “admits that it was formed under Alabama law; however, PT Solutions does business in both Alabama and Georgia, among other places, and its principal place of business is in Kennesaw, Georgia.”

. "An ‘outbound’ forum selection clause is one providing for trial outside of Alabama, while an ‘inbound’ clause provides for trial inside Alabama.’’ Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 348 n.1 (Ala. 1997).

. Sections 8-1-196 and 8-1-197 were added by Act No. 2015-465, effective January 1, 2016. Section- 8-1-190(a) (formerly § 8-1-1(a)), Ala. Code 1975, provides that “[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.” Section 8-1-196, Ala. Code 1975, provides: “Nothing in this article shall be construed to eliminate any professional exemption recognized by Alabama law.” Section 8-1-197, Ala. Code 1975, provides:
"It is hereby declared that this article expresses fundamental public policies of the State of Alabama. Therefore, this article shall govern and shall be applied instead of any foreign laws that might otherwise be applicable in those instances when the application of those foreign laws would violate a fundamental public policy expressed in this article.”