Rel: November 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0541
_____

### Ex parte Best Choice Roofing Alabama, LLC

### PETITION FOR WRIT OF MANDAMUS

### (In re: Kalie Dixon and Michael Dixon

### v.

### Best Choice Roofing and Home Improvement, Inc., et al.)

### (Washington Circuit Court: CV-24-900088)

SELLERS, Justice.

Best Choice Roofing Alabama, LLC ("BCRA"), petitions this Court for a writ of mandamus directing the Washington Circuit Court ("the trial court") to vacate its order denying BCRA's motion to dismiss, on the basis of improper venue, the claims asserted against it in an action commenced by Michael Dixon and his wife Kalie Dixon, and to enter an order granting its motion to dismiss. We grant the petition and issue the writ.

I.  Facts and Procedural History

In November 2024, the Dixons brought an action against BCRA, among others, seeking damages for breach of contract and wantonness in connection with BCRA's replacement of an existing roof on the Dixons' house. In their complaint, the Dixons alleged, in relevant part, that, in March 2021, they entered into a contract with BCRA, pursuant to which BCRA agreed to replace the existing roof on their house, [1] and that, after the work was completed, they began noticing signs that the roof was leaking and seeing signs of water damage. The Dixons contacted BCRA, explained their concerns, and provided BCRA an opportunity to correct

---

[1]While Kalie did not sign the contract, the Dixons alleged that she is a party to the agreement, and they do not argue that she is not contractually bound.

the defects, all to no avail. The Dixons further alleged that their house remained "damaged and nearly uninhabitable."

BCRA filed a motion to dismiss the claims against it on the basis of improper venue. See Rule 12(b)(3), Ala. R. Civ. P. Specifically, BCRA argued that the two-page contract it executed with Michael contained an outbound forum-selection clause stating: "If any lawsuit is brought to enforce the obligations of either party to this contract, it is agreed that such lawsuit will be brought in Sumner County, Tennessee and that the laws of Tennessee will govern the contract unless prohibited by law, as applicable." The Dixons filed a response to the motion to dismiss, arguing that requiring them to litigate their claims in Tennessee would be seriously inconvenient and would deprive them of their day in court. Following a hearing, the trial court, on July 7, 2025, entered an order denying BCRA's motion to dismiss, determining that the Dixons had proved that the "forum selection clause is clearly unreasonable under the facts of the case … and that the chosen forum is seriously inconvenient under the circumstances." This mandamus petition followed.[2]

---

[2]This Court stayed the proceedings below pending the outcome of this mandamus proceeding.

3

## II. Standard of Review

"A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: '"(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."' Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001))."

Ex parte Alabama Dep't of Corr., 252 So. 3d 635, 636 (Ala. 2017).

This Court has held that "a petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying the enforcement of an 'outbound' forum-selection clause when it is presented in a motion to dismiss." Ex parte D.M. White Constr. Co., 806 So. 2d 370, 372 (Ala. 2001) (citing Ex parte CTB, Inc., 782 So. 2d 188 (Ala. 2000)). We review the trial court's ruling to determine whether it exceeded its discretion. Id. (citing O'Brien Eng'g Co. v. Continental Machs., Inc., 738 So. 2d 844 (Ala. 1999)).

## III. Discussion

BCRA contends that it has a clear legal right to a dismissal of the Dixons' claims against it because, it says, the parties' contract contains a mandatory outbound forum-selection clause requiring any action

4

between the parties concerning the contract to be brought in Sumner County, Tennessee. This Court has stated:

> "An outbound forum-selection clause is enforceable unless the challenging party can establish that enforcement of the clause would be unfair on the basis that the contract '"[w]as affected by fraud, undue influence, or overweening bargaining power or … enforcement would be unreasonable on the basis that the [selected] forum would be seriously inconvenient.'" The burden on the challenging party is difficult to meet."

Ex parte D.M. White Constr. Co., 806 So. 2d at 372 (quoting Ex parte CTB Inc., 782 So. 2d at 191, quoting in turn Professional Ins. Corp. v. Sutherland, 700 So. 2d 347, 352 (Ala. 1997)). In Ex parte Rymer, 860 So. 2d 339, 342-43 (Ala. 2003), this Court stated:

> "In order to demonstrate that the chosen forum is seriously inconvenient, the party challenging the clause must show that a trial in that forum would be so gravely difficult and inconvenient that the challenging party would effectively be deprived of his day in court. Ex parte Northern Capital Res. Corp., 751 So. 2d [12,] 15 [(Ala. 1999)].
>
> > "'When an agreement includes a clearly stated forum-selection clause, a party claiming that clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five factors: (1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should

5

the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a clear indication whether the chosen forum is reasonable.'

"Ex parte Northern Capital Resource Corp., 751 So. 2d at 15."

The Dixons do not contend that the forum-selection clause would be unfair based on fraud, undue influence, or overweening bargaining power. Rather, they say the forum-selection clause should not be enforced because, among other things, litigating their claims against BCRA in Sumner County, Tennessee, would be seriously inconvenient for them. The forum-selection clause, however, is not ambiguous and plainly dictates that any dispute relating to the contract must be brought in Sumner County, Tennessee. Accordingly, BCRA met its prima facie burden of demonstrating that the Dixons' claims against it are subject to the forum-selection clause, and, thereafter, the burden shifted to the Dixons to clearly establish that enforcement of the forum-selection clause would be either "unfair or unreasonable under the circumstances." Professional Ins. Corp., 700 So. 2d at 348.

6

In support of the Dixons' response in opposition to BCRA's motion to dismiss, Michael submitted his affidavit to demonstrate that enforcement of the forum-selection clause would be unreasonable and would constitute an extreme hardship. In its order denying BCRA's motion to dismiss, the trial court stated:

"8. In the present case, the Plaintiffs are individuals and the Defendants are businesses. The subject matter of the contract is the replacement of a roof on the Plaintiffs' home in Washington County, Alabama. The chosen forum does not have any inherent advantages in this case. The home is in Washington County, Alabama. The work was done in Washington County, Alabama. The damage to the home alleged by the Plaintiffs must be viewed or investigated in Washington County, Alabama. The actual work was done by a local company. All of the evidence and witnesses are connected to Washington County, Alabama and not to Sumner County, Tennessee. The only connection to Tennessee is the corporate headquarters of the Defendant, Best Choice Roofing, Inc. While the parties should have been able to understand the contract as written, extraordinary facts have arisen since the agreement was entered that would make the chosen forum seriously inconvenient. The Plaintiffs allege their home is uninhabitable as a result of the actions of the Defendants and that they have been required to purchase a camper trailer to live in. The Plaintiffs contend this has caused a financial hardship for them. None of that could have been anticipated when the contract was entered.

"9. The Plaintiffs allege the clause was not discussed prior to signing the contract. The contract was signed electronically. The Plaintiffs allege they thought Best Choice Roofing Alabama was an Alabama company.

7

"10. The fact that Sumner County, Tennessee is more than 400 miles from the Plaintiffs' home and they do not have reliable transportation is an important issue. The costs of litigation in Tennessee to the Plaintiffs would be very difficult for them to bear.

"11. This Court also considers that the witnesses and evidence are in Washington County, Alabama.

"12. The Court finds that the Plaintiffs have proven that [the] forum selection clause is clearly unreasonable under the facts of this case considered together and that the chosen forum is seriously inconvenient under the circumstances."

The issue before this Court is whether the trial court exceeded its discretion by denying BCRA's Rule 12(b)(3) motion to dismiss for improper venue. See Ex parte D.M. White Constr. Co., 806 So. 2d at 372. We find that it did, and, in our analysis, we consider the five factors set forth in Ex parte Northern Capital Resource Corp., 751 So. 2d 12, 15 (Ala. 1999), and applied in Ex parte Rymer.

(1) Are the parties business entities or businesspersons?

The trial court noted in its order that the Dixons are individuals and that BCRA is a business entity. Forum-selection clauses have been routinely enforced by business entities against individuals. See Castleberry v. Angie's List, Inc., 291 So. 3d 37 (Ala. 2019); Ex parte

8

<u>Rymer</u>, 860 So. 2d at 339; and <u>Madasu v. Berry Co.</u>, 950 So. 2d 333 (Ala. Civ. App. 2006).

When an individual executes and delivers a contract, the fact that he or she is acting in an individual capacity, in and of itself, does not mean that he or she lacks the business acumen to question the inclusion of a forum-selection clause. <u>See</u> <u>Castleberry</u>, 291 So. 3d at 43 (holding that, although they entered into a contract in their individual capacities, the Castleberrys failed to demonstrate that their lack of business acumen weighed against enforcing the forum-selection clause because they did not provide any information regarding their business experience or level of sophistication).

Like in <u>Castleberry</u>, the Dixons have failed to provide any evidence to demonstrate their lack of business acumen. In their answer, the Dixons assert:

> "The facts set forth in [Michael's] affidavit clearly indicate that [Michael] and his wife are unsophisticated people of very modest means,[3] and those details, when combined with the court's observation of [Michael] and the statements before the trial court, could clearly have formed an adequate basis for

---

[3]Michael, among other things, asserted that he and Kalie drive older cars and cannot afford a hotel room.

9

the trial court to determine that the first fact of the analysis should be viewed in favor of [the] Dixon[s]."

Answer at 18.

While the facts set forth in Michael's affidavit might tend to shed light on the current financial state of the Dixons, none of them relate to the Dixons' business acumen or sophistication at the time Michael entered into the contract with BCRA.

Although the trial court's order notes that the forum-selection clause was not discussed before the parties signed the contract, that the contract was signed electronically, and that the Dixons thought BCRA was an Alabama company, these facts have no bearing on the Dixons' sophistication, business acumen, or understanding of the contract at the time Michael voluntarily entered into it. Under Alabama law, " 'a person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document.'" Ex parte Rymer, 860 So. 2d at 342 (quoting Locklear Dodge City, Inc. v. Kimbrell, 703 So. 2d 303, 306 (Ala. 1997)) (enforcing an outbound forum-selection clause when the party trying to avoid the clause claimed that he should not be bound by it because he had not read it). In Michael's affidavit, he admits to signing the contract. The contract was only two pages long and, just

10

above the signature line, contained the following language: "BY SIGNING, CUSTOMER HAS READ AND AGREES TO TERMS ON BACK OF PAGE." (Capitalization in original.) Michael also placed his initials on the second page of the contract, which included the forum-selection clause. By signing the contract, Michael bound the Dixons to the terms of the agreement. See note 1, supra. Thus, nothing before this Court legally implicates the Dixons' business acumen one way or the other; the fact they are not businesspersons does not weigh against enforcement of the forum-selection clause or justify denying the motion to dismiss.

### (2) What is the subject matter of the contract?

The trial court's order states that "[t]he subject matter of the contract is the replacement of a roof on the Plaintiffs' home in Washington County, Alabama." BCRA argues that the replacement of a roof has no particular impact on the forum-selection clause because, it says, the parties entered into a simple contract, which resulted in a "vanilla lawsuit," and that the contract does not implicate any "special policy interest in retaining such a lawsuit." Nothing about the parties'

contract is so unique as to defeat enforcement of the forum-selection clause. This factor does not support denying the motion to dismiss.

(3) Does Tennessee provide an inherent advantage to one party over the other?

The trial court's order points out that litigating the Dixons' claims against BCRA in Sumner County, Tennessee, does not provide any inherent advantages because virtually all the evidence and witnesses are located in Washington County, Alabama. BCRA acknowledges in its petition that it is the only party that has an inherent advantage in defending against the Dixons' claims in Tennessee, given that it is a Tennessee company and is headquartered there. Thus, while this factor weighs slightly against enforcing the outbound forum-selection clause as a matter of inconvenience, this Court has repeatedly upheld outbound forum-selection clauses when the chosen forum is the state in which a party is headquartered or has its principal place of business. See, e.g., Ex parte International Paper Co., 285 So. 3d 753, 759 (Ala. 2019) (enforcing an outbound forum-selection clause when the chosen forum was the state in which the defendant's headquarters were located); Ex parte United Propane Gas, Inc., 258 So. 3d 1103 (Ala. 2018) (enforcing an outbound forum-selection clause when the chosen forum was the state in which the

defendant's headquarters were located); and Ex parte Nawas Int'l Travel Serv., Inc., 68 So. 3d 823 (Ala. 2011)(enforcing an outbound forum-selection clause when the chosen forum was the state of the defendant's principal place of business). Further, regardless of any inherent advantage to BCRA, or any inconvenience to the Dixons, the fact remains that the parties voluntarily agreed to litigate their claims in Tennessee in the event of a contractual dispute.

(4) Should the parties have been able to understand the outbound forum-selection clause as written?

The trial court's order states "that the parties should have been able to understand the contract as written." We agree with the trial court that the language of the forum-selection clause is unambiguous and that, regardless of whether the Dixons read it or not, the language of the forum-selection clause does not preclude its enforcement. Therefore, this factor weighs in favor of enforcing the outbound forum-selection clause.

(5) Have extraordinary facts arisen since the contract was entered into that would make the chosen forum seriously inconvenient?

In his affidavit, Michael asserts that the Dixons had to buy a camper to live in because their house is nearly uninhabitable after the roof replacement. He further asserts that because of the nature of this

13

sudden expense, an unexpected financial burden now exists that did not exist at the inception of the contract. This argument, which is similar to the one made in Ex parte International Paper Co., also falls short. In Ex parte International Paper Co., this Court issued a writ of mandamus directing the trial court in that case to vacate its order denying the defendant's motion to dismiss based upon the existence of a valid outbound forum-selection clause, and to enter an order dismissing the action, despite the fact that the plaintiffs had argued that the actions of the defendant had "essentially bankrupted" them so that they could not bear the expense of litigation in the chosen forum. 285 So. 3d at 758. While this Court did not explicitly state whether such a financial burden was an "extraordinary" circumstance, this Court ultimately concluded that, because the majority of the other factors weighed in favor of enforcing the outbound forum-selection clause, even though doing so would place a serious financial burden on the plaintiffs, the chosen forum had not been shown to be so seriously inconvenient as to allow the plaintiffs to avoid enforcement of the forum-selection clause.

Here, unlike in Ex parte International Paper Co., the financial burden was caused by the Dixons' having to purchase temporary housing,

not by the bankruptcy of the plaintiffs. If bankruptcy was not enough to sway this Court in favor of avoiding an outbound forum-selection clause, the sudden purchase of a camper to live in temporarily should not preclude the enforcement of the outbound forum-selection clause.

The trial court's order also acknowledged other facts that the trial court considered in determining that the chosen forum was seriously inconvenient. Specifically, the trial court noted that the Sumner County courthouse is over 400 miles from the Dixons' house; that the Dixons' vehicles are untrustworthy for long trips; that renting a hotel room would be expensive; that Kalie would be unable to attend a trial in Tennessee because of her job; that witnesses are located in Washington County, Alabama; and that the Dixons want a jury to be able to view the house in person. However, none of these facts are "extraordinary" facts that arose after the contract was entered into. Ex parte Rymer, 860 So. 2d at 343 (quoting Ex parte Northern Cap. Res. Corp., 751 So. 2d at 15). As mentioned above, the Dixons were aware of each of these possible problems at the time they voluntarily signed the contract. This Court heavily weighs each party's freedom to contract and will not allow one party to "simultaneously claim the benefits of a contract and repudiate

its burdens and conditions." <u>Southern Energy Homes, Inc. v. Ard,</u> 772 So. 2d 1131, 1134 (Ala. 2000). No extraordinary facts arose since the making of the contract, and thus this factor weighs in favor of enforcing the outbound forum-selection clause.

However, regardless of whether these facts arose after the contract was entered into, this Court has held that the distance of travel for witnesses or plaintiffs does not establish that a chosen forum is unreasonable. <u>See</u> <u>Ex parte Northern Cap. Res. Corp.</u>, 751 So. 2d at 12. Therefore, the trial court's consideration of witnesses being located in Washington County, as well as its characterization of the distance the Dixons would be required to travel using unreliable means of transportation as an "important issue," are grounds that are unfounded in the law to support avoidance of the forum-selection clause. Further, as to the issue of unreliable transportation, Michael alleged in his affidavit that the Dixons' 2011 pickup truck and 2017 automobile are untrustworthy for traveling long distances. However, that subjective assessment has not been supported by any evidence showing why the vehicles are not trustworthy. The Dixons also have not provided any evidence showing that borrowing a vehicle or purchasing airfare is

impossible in their current financial situation. Other facts, such as the hotel-room price and Kalie's trouble getting off work, might amount to inconvenience, but they do not rise to the level of establishing that the Dixon's would be deprived their day in court. See Ex parte PT Sols. Holdings, LLC, 225 So. 3d 37, 46 (Ala. 2016) (holding that plaintiff who argued that litigating in another state would "spread thin [her] resources" failed to demonstrate inconvenience sufficient to void a forum-selection clause).

Finally, the Dixons' argument that a site visit to their house will be requested and that such a visit will be impossible to perform if their claims against BCRA are tried in Tennessee also falls short because the decision whether to grant or to deny a site visit is within the trial court's discretion, not the plaintiffs'. Kohn v. Johnson, 565 So. 2d 165, 169 (Ala. 1990) (holding that, in exercising its discretionary power to grant a jury access to a site, a trial court may consider if the thing to be seen can just as well be photographed). We find it unpersuasive that a picture cannot capture the state of the house, regardless of whether the jury can physically smell the "rot and mildew" or touch the "soft places in the walls," as the Dixons suggest is necessary. Further, just allowing a

17

picture of the house to be taken without taking a visit would not rise to the level of depriving the Dixons of their day in court.

In sum, under Alabama law, the Dixons had a "difficult" burden to "clearly establish" that the enforcement of the contract's outbound forum-selection clause would be unreasonable under the circumstances. Ex parte International Paper Co., 285 So. 3d at 757. When considering all five factors set forth in Ex parte Northern Capital Resource Corp. and applying them to the facts of this case, it would not be unfair and unreasonable, seriously inconvenient, or akin to depriving the Dixons of their day in court to require them to litigate their claims against BCRA in Sumner County, Tennessee. The parties signed an unambiguous contract and are entitled to enforce its terms. The Dixons have failed to overcome their burden to prove otherwise. Accordingly, the trial court exceeded its discretion in denying BCRA's motion to dismiss on the basis that venue in Washington County would be improper.

## IV. Conclusion

BCRA has demonstrated a clear legal right to have the claims asserted against it dismissed on the basis that venue in Washington County is improper because of the outbound forum-selection

clause in the parties contract. Therefore, we direct the trial court to vacate its July 7, 2025, order denying BCRA's motion to dismiss the claims asserted against it in the Dixons' second amended complaint and to enter an order dismissing the Dixons' claims against BCRA, pursuant to Rule 12(b)(3), Ala. R. Civ. P.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Wise, Bryan, Mendheim, Cook, and McCool, JJ., concur.